**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 30, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KENNETH LEE KELLEY,

Defendant - Appellant..

No. 07-7111
(D.C. Nos. 6:05-CV-00139-JHP and
6:03-CR-00051-JHP-1)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **HOLLOWAY**, and **SEYMOUR**, Circuit Judges.

Petitioner-Appellant Kenneth Lee Kelley appeals the district court's

denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2255. We

previously granted Mr. Kelley a certificate of appealability. Exercising

jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a), we REVERSE the denial

of Mr. Kelley's petition.

## I. BACKGROUND

Mr. Kelley was charged in an eleven-count superseding indictment with

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

various drug and firearms offenses. In an oral plea agreement, he pleaded guilty to ten of the eleven counts in exchange for the government's agreement to dismiss the remaining count, which carried a mandatory twenty-five year consecutive sentence. In April 2004, Mr. Kelley received a within-Guidelines sentence of 360 months' imprisonment (thirty years). He did not appeal.

Nearly one year later, Mr. Kelley filed a 28 U.S.C. § 2255 petition in district court alleging that his counsel, Donn Baker, was constitutionally ineffective for disregarding Mr. Kelley's request to appeal his sentence. The district court held an evidentiary hearing and denied the motion. Mr. Kelley appealed, alleging the court should have appointed counsel for him at the hearing. We agreed, and we reversed and remanded with instructions "to appoint counsel and conduct further proceedings as warranted." *United States v. Kelley*, 190 Fed. Appx. 621, 622, 2006 WL 2130448 (10th Cir. Aug. 1, 2006).

On remand, the district court appointed counsel and held a second evidentiary hearing. Mr. Kelley testified that on the day he was sentenced, as he was being escorted from the courtroom, he asked Mr. Baker, "Are you going to take care of everything?" He said that Mr. Baker responded, "Yes." Mr. Kelley stated that his question was intended as a request for an appeal. Although Mr. Baker did not deny that the exchange occurred, he said that "the word appeal was never—we never discussed appeal." He testified that prior to Mr. Kelley's plea, he told Mr. Kelley that if he pleaded guilty and was sentenced within the

Guidelines range, there would be nothing left to appeal.

Following the second evidentiary hearing, the district court determined that there was "nothing in the record to support [Mr. Kelley's] allegations that he requested Mr. Baker to file an appeal or that Mr. Baker should have understood his statements to mean he wanted [Mr.] Baker to file an appeal." *Kelley v. United States*, No. CIV-05-139-P (E.D. Okla. March 14, 2007) (order denying habeas petition).  The court found that "counsel was not ineffective for failing to timely file a notice of appeal" and that Mr. Kelley "did not timely request that an appeal be filed by Mr. Baker." *Id.*  Accordingly, the court denied Mr. Kelley's § 2255 motion.

Mr. Kelley appealed again, alleging the district court erred in failing to address whether Mr. Baker was ineffective for not consulting with Mr. Kelley to determine whether he wanted to appeal.  We reversed and remanded to the district court with instructions to "undertake the appropriate inquiry and make the necessary findings to determine whether Mr. Baker had a duty to consult with Mr. Kelley and, if he did, whether his failure to do so prejudiced Mr. Kelley." *United States v. Kelley*, 253 Fed. Appx. 743, 745–46, 2007 WL 3230402 (10th Cir. Nov. 1, 2007).  Although we expressed no opinion on the merits of the questions to be evaluated by the district court, we observed that the Supreme Court outlined the appropriate inquiry for analyzing these questions in *Roe v. Flores-Ortega*, 528 U.S. 470, 478–86 (2000).  *Id.*

On second remand, the district court found that "Mr. Baker clearly had a duty to consult with Mr. Kelley regarding an appeal . . . [and] Mr. Baker very appropriately completed this duty . . . by advising [Mr. Kelley] if he entered a plea of guilty, there would be nothing to appeal." *Kelley v. United States*, No. CIV-05-139-JHP, 2007 WL 4287610 at *1 (E.D. Okla. Dec. 4, 2007). The court again denied Mr. Kelley's § 2255 motion, and this appeal followed.

## II. DISCUSSION

We review the district court's factual findings on a § 2255 motion for clear error and its legal conclusions de novo. *United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002). To prove that counsel was constitutionally ineffective, a defendant must show (1) that counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) that counsel's deficient performance prejudiced the defendant. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). An attorney who "disregards specific instructions to perfect a criminal appeal acts in a manner that is both professionally unreasonable and presumably prejudicial." *United States v. Snitz*, 342 F.3d 1154, 1156 (10th Cir. 2003). In such circumstances, "a defendant is entitled to a new appeal without a showing that his appeal likely would have had merit." *United States v. Garrett*, 402 F.3d 1262, 1265 (10th Cir. 2005) (quotations and alterations omitted). On the other hand, "a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain

- 4 -

that, by following his instructions, his counsel performed deficiently." *Flores-Ortega*, 528 U.S. at 477.

Mr. Kelley never gave his attorney "specific instructions" to file an appeal. *See Kelley*, 253 Fed. Appx. at 745 ("We agree with the district court . . . that Mr. Kelley's request that Mr. Baker 'take care of everything' does not constitute a specific instruction to file an appeal.") (citation omitted). But he never explicitly asked his attorney *not* to file an appeal, either. To decide whether his attorney's representation fell below an objective standard of reasonableness, we therefore apply the test used "[i]n those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken . . . ." *Flores-Ortega*, 528 U.S. at 478. We first ask:

> whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning— advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.

*Id.* (citation omitted).

When counsel does not consult with the defendant, we must evaluate whether counsel had a duty to consult, "tak[ing] into account all the information counsel knew or should have known." *Id.* at 480. The duty arises "when there is a reason to think either (1) that a rational defendant would want to appeal (for

example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.*

If a defendant establishes that counsel had a duty to consult with the defendant and failed to do so, we move to the second part of the *Strickland* test. The defendant must show prejudice based on counsel's deficient performance. *Flores-Ortega*, 528 U.S. at 481. To show prejudice when counsel fails to consult with a defendant regarding an appeal, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.

A.     Whether Counsel "Consulted" with Mr. Kelley

Our first question is "whether counsel in fact consulted with the defendant about an appeal." *Flores-Ortega,* 528 U.S. at 478. The district court decided the case on this issue, holding that Mr. Baker did consult with Mr. Kelley. *Kelley*, 2007 WL 4287610 at *1. This question is a mixed question of fact and law. We review the district court's factual findings regarding the parties' conduct for clear error, but the application of those facts to the Supreme Court's legal standard is a question of law that we review de novo. *See Mora*, 293 F.3d at 1216.

Mr. Baker made two statements to Mr. Kelley regarding an appeal. It is uncontested that he told Mr. Kelley that only two percent of appeals are successful. The district court also found that he told Mr. Kelley that if he pleaded

guilty, "there would be nothing to appeal." *Kelley*, 2007 WL 4287610, at *1. The district court based its holding on the second statement, determining that Mr. Baker "very appropriately completed [his] duty" to consult with Mr. Kelley. *Id.*

We do not believe that Mr. Baker's statement that there would be nothing to appeal meets the Supreme Court's definition of "consult." As noted above, the Court requires counsel to advise "the defendant about the advantages and disadvantages of taking an appeal, and mak[e] a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478. Arguably, Mr. Baker's statement informed Mr. Kelley of the disadvantages of taking an appeal—that he would probably lose. However, simply stating that a plea agreement would leave "nothing to appeal" does not inform a defendant of any advantages of taking an appeal, nor does it make an effort to determine the defendant's wishes regarding an appeal, as the Supreme Court requires. In addition, such a statement is potentially misleading to a defendant who has not waived his appellate rights. For those reasons, we disagree with the district court's conclusion that Mr. Baker consulted with Mr. Baker about an appeal.[1]

---

[1]In addition, we note that our second remand order instructed the district court to "make the necessary findings to determine whether Mr. Baker had a duty to consult with Mr. Kelley and, if he did, whether his *failure to do so* prejudiced Mr. Kelley." *Kelley*, 253 Fed. Appx. at 745–46 (emphasis added). That language strongly suggests that this court had already determined that Mr. Baker did not consult with Mr. Kelley regarding an appeal.

B.      The Duty to Consult

Having established that Mr. Baker failed to consult, we next ask whether Mr. Baker had a duty to consult.  Such a duty would arise if there were reason to believe either that a rational defendant would desire an appeal or that Mr. Kelley reasonably demonstrated to Mr. Baker that he was interested in appealing.  *See id.* at 480.  The district court initially stated that Mr. Baker had a duty.  *Kelley*, 2007 WL 4287610 at *1.  However, its analysis suggests a different conclusion.  The district court wrote that "nothing occurred at sentencing which gave counsel a reason 1) to believe the Petitioner would want to appeal or 2) that Petitioner was actually interested in appealing." *Id.*  Thus, applying the Supreme Court's standards, the district court apparently concluded that Mr. Baker had no "reason to think . . . that a rational defendant would want to appeal," and that Mr. Kelley had not "reasonably demonstrated to counsel that he was interested in appealing." *See Flores-Ortega*, 528 U.S. at 480.  Whether counsel had a duty to consult is a question of law we review de novo.  *See Mora*, 293 F.3d at 1216.[2]

Although the Supreme Court rejected a bright-line rule that would require counsel always to consult with a defendant regarding an appeal, the Court observed that "in the vast majority of cases" counsel has a duty to consult. *Flores-Ortega*, 528 U.S. at 480–81.  In determining whether a duty exists in a

[2]Because the existence of a duty is a legal question that we review de novo, our construction of the district court's order (i.e., that no duty existed) does not change the result of this appeal.

particular case, we look to "all relevant factors," including "whether the conviction follows a trial or a guilty plea" and "whether the plea expressly reserved or waived some or all appeal rights." *Id.* at 480.

Before Mr. Kelley pleaded guilty, Mr. Baker advised him that this decision would leave no basis for an appeal. Mr. Kelley decided to proceed with the plea anyway. He and Mr. Baker planned no post-plea appeal. At the plea colloquy, Mr. Baker stated that Mr. Kelley understood that his sentence could be as long as thirty years. The district court then advised Mr. Kelley that once the presentence report was released, it would not be unusual for his sentence to be increased beyond that estimate. The court also informed Mr. Kelley that the maximum sentence would be life imprisonment and added, "I can't give you any assurances it'll be anything less than that." Mr. Kelley was sentenced within the Guidelines, *Kelley*, WL 4287610 at *1, and his sentencing in April 2004 occurred before the Supreme Court declared that the Guidelines were not mandatory. *See generally United States v. Booker*, 543 U.S. 220 (2005). Thus, there was no reason, at the time of sentencing, for Mr. Baker "to think . . . that a rational defendant would want to appeal." *See Flores-Ortega*, 528 U.S. at 480.

Nevertheless, the record convinces us that Mr. Kelley reasonably demonstrated his interest in filing an appeal to Mr. Baker. Immediately after the sentencing hearing, Mr. Kelley asked Mr. Baker whether he would "take care of everything," to which Mr. Baker responded affirmatively. Although Mr. Kelley's

question was not a direct request for an appeal, it was a reasonable demonstration of his desire that Mr. Baker take care of his legal matters, and the only remaining legal matter was a possible appeal.[3] Additionally, the day after Mr. Kelley was sentenced, he asked his sister to see Mr. Baker in order to "get started on appealing his sentence." Although she called Mr. Baker's office several times and asked for the first available appointment, she was unable to reach him until after the deadline for filing an appeal had passed.[4] Given Mr. Kelley's question in the courtroom and his sister's subsequent follow-up efforts, Mr. Baker should have realized that he was interested in a possible appeal. We conclude that because Mr. Kelley reasonably demonstrated his interest in appealing to Mr. Baker, Mr. Baker had a constitutionally imposed duty to consult with Mr. Kelley about an appeal.

C.    Prejudice

Having established that Mr. Baker failed to discharge his duty to consult

---

[3] Mr. Baker testified that this request could have referred to taking care of Mr. Kelley's mother, who fainted sometime after sentencing. However, because the record establishes that Mr. Kelley's mother fainted *after* Mr. Kelley made the request, Mr. Baker's argument is unavailing.

[4] The facts in this case are similar to those in *Harrington v. Gillis*, 456 F.3d 118, 122, 129 (3d Cir. 2006), where the court concluded that the defendant had reasonably demonstrated an interest in appealing based in part on the evidence that defendant's girlfriend and former wife made several attempts to contact defense counsel at defendant's request (although never specifying that she wanted to talk to him about an appeal) and that defendant continually expressed his interest in filing an appeal to her.

with Mr. Kelley regarding an appeal, we turn to the question of whether that failure prejudiced Mr. Kelley. Mr. Kelley need only show a presumption of prejudice, not actual prejudice. *See id.* at 482–84. In other words, he "must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. The question of whether he would have prevailed on appeal is not determinative. *See id.* at 486 ("[A] defendant's inability to specify the points he would raise were his right to appeal reinstated will not foreclose the possibility that he can satisfy the prejudice requirement where there are other substantial reasons to believe that he would have appealed.").

We have already concluded that shortly after Mr. Kelley was sentenced, he reasonably demonstrated his interest in filing an appeal both by asking Mr. Baker whether he would "take care of everything" and by asking his sister to follow up with Mr. Baker. Mr. Kelley also testified under oath that he intended to file an appeal, and his sister's testimony confirmed this assertion. Mr. Kelley has therefore also demonstrated a reasonable probability that, but for counsel's failure to consult with him about an appeal, he would have appealed. He has thus established that he was prejudiced by Mr. Baker's conduct.

### III. CONCLUSION

For the foregoing reasons, we hold that Mr. Kelley's counsel had a duty to consult with Mr. Kelley regarding an appeal, that he failed to discharge that duty,

and that his failure to consult prejudiced Mr. Kelley. Accordingly, we REVERSE the district court's denial of Mr. Kelley's § 2255 petition. Because Mr. Kelley has only expressed an interest in appealing his sentence and not his guilty plea, we REMAND with instructions to reinstate the judgment so that Mr. Kelley may file a timely appeal of his sentence.

ENTERED FOR THE COURT,


PER CURIAM.