# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 21, 2011

Lyle W. Cayce
Clerk

No. 08-11223

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JOE GARY RIVAS, JR.,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC Nos. 6:07-CV-018-C & 6:02-CR-42-1-C

Before GARZA, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Joe Gary Rivas, Jr. appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. Rivas is serving life in prison after pleading guilty to conspiracy to import five kilograms or more of cocaine and 1,000 kilograms or more of marijuana. Rivas argues that his counsel rendered ineffective assistance by failing to file a notice of appeal despite

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 08-11223

Rivas's instructions to do so. Because Rivas's counsel failed to properly consult with Rivas regarding his desire to appeal, we REVERSE and REMAND.

## FACTS AND PROCEEDINGS

In November 2002, Rivas was charged with 27 counts in a 28-count sealed indictment, along with 28 other named defendants. The indictment charged Rivas with conspiracy to import five kilograms or more of cocaine and more than 1,000 kilograms of marijuana, participating in a continuing criminal enterprise, conspiracy to commit money laundering, possession with intent to distribute cocaine, distribution of cocaine, possession with intent to distribute marijuana, and distribution of marijuana.

In June 2004, with the assistance of his court-appointed counsel, Dennis Reeves, Rivas pled guilty to one count of conspiracy to import five kilograms or more of cocaine and more than 1,000 kilograms of marijuana. The district court sentenced Rivas to a term of life imprisonment, followed by five years of supervised release, on August 27, 2004. All remaining counts were dismissed.

On September 20, 2004, Rivas's counsel filed an untimely Notice of Appeal. This court remanded to the sentencing court for a determination as to whether the untimely filing of the notice of appeal was due to excusable neglect under FED. R. APP. P. 4(b)(4). The reason given for the untimely filing was counsel's failure to "properly instruct or supervise his office staff to mail the notice of appeal prior to the Labor Day Weekend" and therefore the notice of appeal was mailed late without counsel's knowledge. The sentencing court granted the motion for untimely filing.

On appeal, the only issue argued by counsel was that the sentencing court determined the drug quantities in Rivas's case in violation of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). In an unpublished per curiam opinion, this court determined that Rivas's admission to importing at least five kilograms of cocaine and at least 1,000 kilograms of

2

No. 08-11223

marijuana in his plea did not "establish that Rivas pleaded guilty to the specific amounts of 264 kilograms of cocaine and more than 9,000 kilograms of marijuana" as determined by the Presentence Report ("PSR"). *United States v. Rivas*, 170 F. App'x 309, 310 (5th Cir. 2006). The case was remanded to the district court to determine whether to resentence Rivas in light of the decision in *Booker*. *Id.*

On remand, the sentencing court found "the same sentence would be imposed if the guidelines had been advisory, considering the factors of 18 U.S.C. § 3553(a)" and therefore a resentencing hearing was not necessary. The court entered an order affirming the life sentence on March 28, 2006. Under the procedural rules in effect at the time, an appeal of the court's March 28 order was due on April 11, 2006.

On April 6, 2006, Rivas received a copy of the court's March 28 order and a letter dated March 29, 2006, from counsel. The letter advised Rivas that counsel had consulted with an appellate attorney from the United States Public Defender's Office but had not found any basis to request a resentencing or challenge the March 28 order and, therefore, "had no where else to go." The letter also was intended to end the attorney-client relationship, saying "It is always hard to tell a client that I cannot go forward with their case . . . but that is what I must do." There was no mention in the letter of any deadline by which an appeal of the March 28 order needed to be filed nor did the letter offer any guidance about possible further legal actions Rivas could take.

Rivas responded to counsel in a letter on April 11, 2006, which coincided with the deadline to file an appeal. In the letter, Rivas instructed counsel to file an appeal of the court's March 28 order on the basis that there were no jury findings regarding his "guilt-innocence" or the actual quantity of drugs. Counsel acknowledges he received this letter but he is unsure of the exact day it arrived. He did not attempt to contact Rivas after receiving the April 11 letter.

3

No. 08-11223

Rivas also claims he attempted to contact his counsel by phone in between receiving the letter from counsel on April 6 and mailing his April 11 letter. There is no evidence in the record to verify Rivas's attempts to call counsel. Rivas claims his calls from the prison phone system were not accepted by anyone in counsel's office and thus he was unable to leave a voice message. Counsel claims to have no records indicating that Rivas called him between April 6 and April 11.

Having received no response after his April 11 letter, Rivas mailed a second letter to counsel on May 6, 2006, asking about the status of his appeal. The letter also requested a copy of the plea agreement and transcripts of the plea and sentencing hearings. Counsel admits receiving this second letter but he made no attempt to respond.

Rivas's counsel does however admit that at some point after April 11, the two spoke on the phone, possibly several times, although he was not able to recall specific dates. In a letter addressed to counsel and dated June 29, 2006, Rivas stated he had a telephone conversation with counsel on June 25, 2006, and on the call, counsel confirmed receipt of the April 11 and May 6 letters and told Rivas that he did not file a notice of appeal regarding the March 28 resentencing order.

In April 2007, Rivas filed the 28 U.S.C. § 2255 motion to vacate, set aside, or correct the sentence that forms the basis for this appeal. Rivas raised the following grounds for review in his § 2255 motion:

(1) His plea of guilty was involuntary and unintelligent because it was based on objectively deficient advice of counsel regarding his possible sentence;

(2) His sentence was improperly enhanced based upon hearsay evidence and judicial, rather than jury, fact findings; and,

(3) Counsel ineffectively failed to file an appeal after Rivas's resentencing and he was constructively denied counsel on appeal.

4

No. 08-11223

A magistrate judge held an evidentiary hearing in March 2008 at which both Rivas, now represented by new counsel John Young, and his trial counsel testified under oath. Rivas offered testimony regarding each of the grounds raised in his § 2255 motion while his trial counsel testified about the circumstances of Rivas's plea and sentencing and the communications and events surrounding the failure to appeal the March 28 resentencing order. The magistrate subsequently issued a report and recommendation concluding that Rivas was not entitled to relief. The district court reviewed the matter *de novo*, made extensive findings of fact, adopted the magistrate's report and recommendation, dismissed Rivas's motion, and denied a certificate of appealability ("COA"). *Rivas v. United States*, No. 6:07-CV-018-C, 2008 WL 5262736 (N.D. Tex. Dec. 17, 2008).

Rivas filed a timely *pro se* notice of appeal of the denial of his § 2255 motion. He also sought a COA from this court, arguing that (1) trial counsel rendered ineffective assistance in connection with his guilty plea by misinforming him that he could receive a departure below the statutory minimum and by failing to investigate his case adequately, and (2) counsel rendered ineffective assistance by failing to file a notice of appeal of the sentencing court's March 28 order. Rivas was granted a COA solely on the latter claim. All other COA issues were carried with the case, and Rivas's motions to supplement the record and appoint counsel were denied.

## DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), our review is limited to the issue enumerated in the COA. 28 U.S.C. § 2253(c)(1), (3). In reviewing a district court's denial of a § 2255 motion to vacate, set aside or correct a sentence, we review questions of fact for clear error and questions of law *de novo*. *United States v. Edwards*, 442 F.3d 258, 264 (5th

Cir. 2006). Any subsidiary findings of basic, historical fact made by the district court after the § 2255 evidentiary hearing are subject to review under the clearly erroneous standard. *United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005). These are facts "in the sense of a recital of external events and the credibility of their narrators." *Id.* at 518 n.9 (quoting *Washington v. Watkins*, 655 F.2d 1346, 1351 (5th Cir. Unit A Sept. 1981)). In determining whether Rivas received effective assistance of counsel, we thus make an independent evaluation based on the district court's subsidiary findings.

## B. Analysis

To demonstrate a claim for ineffective assistance of counsel, a defendant must show that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "counsel's deficient performance prejudiced the defendant." *Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). This test also applies to claims, like Rivas's, "that counsel was constitutionally ineffective for failing to file a notice of appeal." *Flores-Ortega*, 528 U.S. at 477.

### *1. Counsel's representation fell below an objective standard of reasonableness*

The Supreme Court has long held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)). This is true even when a defendant has waived his right to a direct appeal and collateral review, such as through a waiver clause in a plea agreement. *United States v. Tapp*, 491 F.3d 263, 265–66 (5th Cir. 2007).

There are, however, finer contours to this rule because the reasonableness inquiry established in *Strickland* requires us to engage in a circumstance-specific review of the facts of the particular case. *Flores-Ortega*, 528 U.S. at 477–78. Because the facts of each case are different, we have avoided a bright

line rule requiring criminal defense counsel to perfect an appeal in every criminal conviction. *White v. Johnson*, 180 F.3d 648, 652 (5th Cir. 1999). Thus, when a criminal defendant fails to inform his counsel in a timely manner that he wishes to appeal his conviction, counsel's failure to file a notice of appeal may not be professionally unreasonable. *See Childs v. Collins*, 995 F.2d 67, 69 (5th Cir. 1993) (affirming the denial of defendant's ineffective assistance of counsel claim when the defendant failed to communicate any indication of his desire to appeal his conviction during the three-month period between his sentencing and the filing of his habeas petition).

However, when a defendant definitively and timely notifies his counsel that he wishes to appeal and counsel does not file a notice of appeal, we presume that counsel's performance was unreasonable "because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice." *Flores-Ortega*, 528 U.S. at 478. This is so because "filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." *Id.*

In addition to considering whether a defendant has clearly communicated a desire to appeal and whether such communication was made in a timely manner, we also consider whether counsel "fully inform[ed] the defendant as to his appellate rights." *White*, 180 F.3d at 652. To meet his constitutional duty, counsel must do more than simply give the defendant notice "that an appeal is available or advice that an appeal may be unavailing." *Id.* Instead, counsel must advise the defendant "not only of his right to appeal, but also of the procedure and time limits involved and of his right to appointed counsel on appeal." *Id.* (quoting *United States v. Faubion*, 19 F.3d 226, 231 (5th Cir. 1994)). Failure to provide such advice is constitutionally deficient performance under *Strickland. Id.*

No. 08-11223

The determination of whether counsel properly advised his client about the decision to appeal is an even more nuanced inquiry.  When counsel is unaware as to whether a defendant wishes to appeal, such as Rivas's counsel prior to his receipt of Rivas's April 11 letter, we consider "whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Flores-Ortega*, 528 U.S. at 478.

As defined by the Supreme Court, the term "consult" conveys a specific meaning: "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.*  The Court has further stated that counsel has a constitutional duty to consult with the defendant about an appeal "when there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480.  When making this determination, a court must take into account all the information that counsel knew or should have known.  *Id.*

For example, if counsel advises the defendant that a guilty plea will result in a certain sentence, the defendant agrees to the plea based on counsel's advice, the court imposes the expected sentence in line with counsel's advice, the defendant expresses no interest in appealing, and counsel indicates that there are no nonfrivolous grounds to appeal, it is unlikely counsel's actions would be unreasonable if he failed to explicitly "consult" with the defendant regarding an appeal. *Id.* at 479.  However, if the resulting sentence following a guilty plea is not consistent with the sentence bargained for as part of the plea or if the plea expressly reserved some appeal rights, counsel may still be required to consult with the defendant regarding his desire to appeal when considering all the relevant facts and circumstances of the case. *See id.* at 480 ("Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether

8

No. 08-11223

the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.").

This case rests squarely at the intersection of these prior holdings. From Rivas's perspective, there were several reasons counsel was ineffective: Rivas made an affirmative request for counsel to appeal the March 28 order that counsel failed to act upon; his plea reserved certain appeal rights; he had already successfully appealed the subject matter of the March 28 order thereby indicating his interest in pursuing his appeal rights; the only "advice" he received from counsel was a letter saying it was unlikely a further appeal would be successful; counsel failed to inform him of the procedure or time limits of further appeals; and counsel failed to timely respond to any of his communications. In response, the government argues that counsel was not informed of Rivas's desire to appeal in a timely manner and thus had no duty to file an out-of-time appeal. Further, counsel expressed his opinion that additional appeals would be unavailing and thus had no reason to believe Rivas wanted to appeal.

In support of its arguments that counsel had no reason to think Rivas had an interest in exercising his right to appeal, the government attempts to shift blame back onto Rivas for failing to act quickly enough following the March 28 order, claiming "Rivas provided no explanation for why he waited five days before sending his [April 11] letter." This is not accurate. During the § 2255 motion evidentiary hearing, Rivas testified about the specific reasons he was unable to send his letter to counsel until April 11. Rivas testified he received the letter on April 6, 2006, a Thursday. In between Thursday April 6 and Tuesday April 11 when he mailed his letter, Rivas explained that the prison was on

No. 08-11223

lockdown for one-and-a-half days, during which he was unable to leave his cell. Furthermore, Rivas cited prison rules that restrict access to the library and a typewriter to specific timeslots and the intervening weekend as reasons he was unable to send his letter before Tuesday, April 11.

Considering all the facts and circumstances as we must under *Strickland*, we hold that counsel's performance was professionally unreasonable. While the government is correct that Rivas's counsel may not have had a constitutional obligation to file an out-of-time appeal, this argument focuses too narrowly on the date Rivas's letter was mailed and fails to take into account the surrounding circumstances and counsel's duty to properly consult with Rivas.

Because counsel failed to speak in person or via telephone with Rivas between the court's March 28 order and the April 11 deadline, we have only the March 28 order and counsel's March 29 letter to Rivas to determine if counsel was required to consult with Rivas about filing an appeal or if counsel's letter fulfilled that duty. Looking first at the court's order, the language is brief and provides no guidance about whether an appeal is available or what the appeal deadline would be. The order also provides no discussion with respect to the specific error identified by this court's opinion remanding the case to determine whether resentencing was necessary. The substance of the order simply stated "the Court finds that the same sentence would be imposed if the guidelines had been advisory, considering the factors of 35 U.S.C. § 3553(a). Accordingly, resentencing is not necessary."

Turning to counsel's March 29 letter, the letter did advise Rivas about the research that counsel had done on possible grounds to appeal and expressed counsel's conclusion that further appeals would not be meritorious. Counsel also indicated he would be unable to continue representing Rivas. The letter did not include any mention of how or when an appeal of the order needed to be filed nor did the letter provide any advice about Rivas's ongoing right to counsel or the

10

ability for Rivas to file a *pro se* notice of appeal. Without including more, counsel's letter fails to meet the basic requirement in *White*: counsel must do more than simply give the defendant notice "that an appeal is available or advice that an appeal may be unavailing." 180 F.3d at 652.

Furthermore, counsel had a duty to consult with Rivas under the standard established in *Flores-Ortega*. Unlike the examples offered by the Supreme Court in which counsel would not have a duty to determine whether a criminal defendant wished to appeal, Rivas's counsel was or should have been aware of Rivas's likely desire to appeal the March 28 order.

Counsel was familiar with Rivas's desire to appeal the life sentence based on his prior representation of Rivas through his plea, sentencing, and his first appeal to this court. Indeed, Rivas's April 11 letter instructing counsel to appeal the March 28 order urged counsel to appeal the sentence again because he believed the March 28 order did not explicitly address the error identified by a panel of this court. In Rivas's first appeal, counsel argued that the imposition of a life sentence based on the PSR statement of specific quantities of cocaine and marijuana that did not directly correspond to the charge to which Rivas pled was error. This court agreed and remanded. *See Rivas*, 170 F. App'x at 310 ("[Rivas's plea to a charge of importing at least five kilograms of cocaine and at least 1,000 kilograms of marijuana] does not establish that Rivas pleaded guilty to the specific amounts of 264 kilograms of cocaine and more than 9,000 kilograms of marijuana determined by the Presentence Report. . . . In light of *Booker*, the district court's determination of drug quantity constitutes error."). This court held that this was not harmless error and remanded. On remand, the district court's March 28 order failed to provide a detailed response to the error identified, and instead simply stated the sentence would remain the same under the § 3553(a) factors with no further analysis or explanation.

No. 08-11223

While counsel read the March 28 order and quickly concluded that further appeals would not be fruitful, he is not at liberty to act solely on his own opinion regarding further appeals in light of his knowledge of Rivas's actions throughout the case. *Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty . . . or take an appeal."). Given counsel's knowledge of Rivas's desire to challenge his sentence, there is reason to think Rivas may have been be less than satisfied with the district court's "answer" to this court's remand and likely wanted to appeal again. Counsel's duty to consult required him to at least make an honest effort to determine Rivas's wishes—something he made *no* attempt to do. Not only did counsel fail to file the requested appeal, counsel ignored Rivas's April 11 and May 6 letters and the record reflects that counsel did not speak to Rivas again until late June, long after either counsel, or Rivas acting *pro se*, could have filed a motion for an out-of-time appeal under FED. R. APP. P. 4(b)(4).

Even more troubling under the facts here, the government overlooks its attempt to strictly apply a rule that Rivas's counsel himself violated earlier in the case. At this juncture it would be inconsistent to determine counsel's actions were professionally reasonable when on one hand Rivas, with limited access to resources in prison, missed a deadline by a couple days and must bear the consequences of the small mistake, yet on the other hand, counsel, with a full staff to assist him, made an identical mistake earlier in the case with no repercussions. Despite staff assistance, counsel missed the first appeal deadline because he failed to properly supervise his staff to make sure the notice of appeal was mailed on time. Counsel was able to correct his own error by simply admitting his mistake and the district court granted leave to file an out-of-time appeal on behalf of Rivas. Yet when Rivas narrowly missed a deadline, counsel was not only unwilling to make any such attempt to fix the mistake, he entirely

ignored Rivas's request. Counsel did not offer advice such that Rivas could proceed *pro se* to request an out-of-time appeal. For counsel to simply ignore Rivas's request to file an appeal because it arrived shortly after the deadline, without so much as a brief responsive communication to Rivas that he would not be filing the appeal, does not fulfill counsel's duty to consult with a criminal defendant under *Flores-Ortega*.

Finally, we note that our determination that Rivas's counsel acted in a professionally unreasonable manner is cabined by the specific facts of this case. Assuming that counsel would have acted on Rivas's April 11 letter and filed a notice of appeal, the filing of the notice of appeal would have been untimely and thus would have required the filing of a motion with the district court requesting leave to file an out-of-time appeal. FED. R. APP. P. 4(b)(4). Our determination here is not meant to suggest in any way that counsel has an explicit duty to file an out-of-time appeal with an accompanying motion whenever a criminal defendant makes such a request. Instead, our reasonableness determination is limited to the facts of this case as it relates to counsel's duty to consult, specifically that: (1) counsel failed to fulfill his duty to attempt to determine his client's wishes in a timely manner; (2) when he learned of his client's desire to appeal in what was likely a matter of days or at most a week or two after the deadline, he not only failed to act on Rivas's request but also failed to make any timely attempt to consult with Rivas despite his prior knowledge of Rivas's desires; and (3) counsel did not inform Rivas that he had not, and would not, be filing the appeal.

### *2. Counsel's deficient performance prejudiced Rivas*

Having found that Rivas's counsel did not meet an objective standard of reasonableness, we consider the second prong under *Strickland*: whether counsel's deficient performance prejudiced Rivas.

When considering prejudice in a case involving counsel's failure to file an appeal, we do not require a defendant to show that his appeal would have had merit. *Tapp*, 491 F.3d at 265 (citing *Flores-Ortega*, 528 U.S. at 486). The reason the defendant need not make this showing follows from the reasoning in *Strickland* that when counsel's acts render a court proceeding unreliable or nonexistent, we presume prejudice with no further showing from the defendant of the merits of his claims. *Flores-Ortega*, 528 U.S. at 484. Thus, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id.*

As such, "the defendant must only demonstrate that there is a reasonable probability that, but for counsel's failure, he would have timely appealed." *Tapp*, 491 F.3d at 265. Our focus therefore is whether Rivas can demonstrate that, but for counsel's deficient performance, i.e. counsel's failure to consult, he would have appealed the district court's March 28 order in a timely manner. *Flores-Ortega*, 528 U.S. at 484 (holding that a defendant can demonstrate prejudice by showing that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed"); *see also White*, 180 F.3d at 653 ("To establish prejudice, [a defendant] must show that counsel's failure to fully inform him of his appellate rights actually caused him to lose the right to appeal.").

Here, we have little trouble concluding that if counsel had properly consulted with Rivas by either asking Rivas if he wanted to appeal or informing Rivas about the procedures and time limits to take an appeal of the March 28 order, Rivas would have timely appealed or, at minimum, expressed his desire to appeal to counsel by the April 11 deadline. In fact, despite receiving no guidance as to the deadline for appealing the March 28 order, Rivas made his

No. 08-11223

best attempt at notifying counsel in a timely manner by sending counsel a letter containing his appeal request on the deadline.

Considering the basic logistics and time constraints under which Rivas was working, it is unclear whether he could have even notified counsel to file a notice of appeal prior to the deadline. This becomes apparent by looking at the sequence of events: (1) Rivas received counsel's letter sometime on April 6; (2) any responsive letter needed to arrive in counsel's office either sometime on April 10 or the morning of April 11 in order for counsel to make a timely filing; (3) the lack of any mail service on Sunday April 9; and (4) a minimum one or two days of in-transit time for Rivas's letter to get from the prison in Leavenworth, Kansas to counsel's office in Lubbock, Texas. Adding these up, its not clear what more Rivas could have done to have a letter in counsel's hands any faster. In fact, we note that counsel's letter, mailed on March 29, did not reach Rivas until April 6—a period of eight days including the weekend. If we were to assume the same time line for Rivas to mail a responsive letter to counsel, it would have been impossible for Rivas to meet the appeal deadline. Even if Rivas could have written a response to counsel and given it to prison officials for mailing on the same day he received counsel's letter, Rivas's letter requesting an appeal would have arrived at counsel's office on April 14, three days after the deadline to appeal. Rivas's actions suggest, absent counsel's deficient performance, Rivas would have timely appealed the court's order.

Separately, we note that the district court's determination that Rivas could not have suffered prejudice because his appeal would have been dismissed as untimely relies on pre-*Flores-Ortega* jurisprudence and is not correct. The proper analysis is not whether Rivas's appeal would have been subject to dismissal as untimely but instead whether counsel's ineffective assistance, such as his failure to consult with Rivas, frustrated Rivas's ability to file a timely appeal.

15

The government makes a similar mistake, arguing that a presumption of prejudice should not apply because *Flores-Ortega* only addressed the presumption in the context of the ministerial task of filing a timely appeal and did not specifically address the possibility of an out-of-time appeal. The problem with the government's argument is that we need not rely on a simple *presumption* of prejudice when it is apparent that counsel's actions *actually* resulted in Rivas losing his right to appeal. As discussed above, counsel did not fulfill his duty to consult with Rivas and failed to respond to any of Rivas's communications until after the deadline for even filing an out-of-time appeal had passed, thus preventing Rivas from making an appeal.

The government also argues that Rivas should be required to demonstrate prejudice by showing that, had counsel moved for permission to file an untimely appeal, there is a reasonable probability it would have been granted. (Red Br. 13). Even if we assume the government is correct on this point, we believe Rivas has met this burden considering this record. Rivas testified at the evidentiary hearing about the prison environment limitations that resulted in his inability to mail his letter until April 11. The district court granted a similar motion for an untimely appeal when Rivas's own counsel missed an appeal deadline simply for failing to make sure his staff mailed the notice of appeal in a timely manner. Had Rivas's logistical constraints been explained to the district court, it seems that there is a reasonable probability the district court would have granted permission to file an untimely notice of appeal.

**C. Rivas's Additional Claims**

Because we hold that Rivas was denied effective assistance of counsel, the grant of an out-of-time appeal requires dismissal without prejudice of his § 2255 motion and reentry of the judgment of conviction to permit an appeal. *See United States v. West*, 240 F.3d 456, 459 (5th Cir. 2001) (citing *Mack v. Smith*, 659 F.2d 23, 25–26 (5th Cir. Unit A 1981) (providing that when leave to file an

out-of-time appeal is granted, the district court should reinstate the criminal judgment to trigger the running of a new Rule 4(b) appeal period)).  Accordingly, we do not address Rivas's remaining COA claims carried with the case.  *Mack*, 659 F.2d at 26.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED, Rivas's § 2255 motion is dismissed without prejudice, and the case is REMANDED.  The district court shall re-enter the judgment of conviction to trigger the new time period for filing an appeal under FED. R. APP. P. 4(b).