# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-10952

United States Court of Appeals
Fifth Circuit

**FILED**

March 11, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CARLOS HUMBERTO BEJARANO,

Defendant - Appellant

Cons w/ 12-11005

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CLAUDIA PATRICIA ATEHORTUA-CASTRO,

Defendant - Appellant

Appeals from the United States District Court
for the Northern District of Texas
USDC Nos. 3:11-CV-2784 and 3:11-CV-2780

Before KING, SOUTHWICK, and GRAVES, Circuit Judges.

No. 12-10952

PER CURIAM:*

Defendants-Appellants Carlos Humberto Bejarano and Claudia Patricia Atehortua-Castro appeal the denial of their petitions for habeas corpus under 28 U.S.C. § 2255 for ineffective assistance of counsel.  For the following reasons, we AFFIRM the judgment of the district court.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Defendants-Appellants Carlos Humberto Bejarano and Claudia Patricia Atehortua-Castro ("Appellants"), husband and wife, pled guilty to conspiring to commit money laundering.  According to the terms of the plea agreements, Appellants waived their rights to contest their convictions and sentences in any collateral proceeding except for claims of ineffective assistance of counsel.[1] On October 19, 2010, the district court sentenced both Appellants to forty-two months' imprisonment and a two-year term of supervised release.  The district court allowed Atehortua-Castro to delay the commencement of her prison term and return to China to care for her minor children until Bejarano completed his prison term.  There was no direct appeal.

On October 17, 2011, Bejarano and Atehortua-Castro filed timely *pro se* motions to vacate their sentences and convictions pursuant to 28 U.S.C. § 2255. The motions were consolidated because they presented the same claims and were based on the same underlying facts.  In Bejarano's motion, he alleged ineffective assistance of counsel because his counsel, Michael P. Gibson, failed to file a notice of appeal, file an *Anders* brief, and secure a written pre-

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Appellants reserved the right "(a) to bring a direct appeal of (i) a sentence exceeding the statutory maximum punishment, or (ii) an arithmetic error at sentencing, and (b) to challenge the voluntariness of [their] plea of guilty or this waiver."

agreement from the government requesting immunity.  Bejarano asserted that "he has shown and will further show that he would have taken an appeal."  He also argued that he is actually innocent.  Bejarano subsequently moved to amend his petition to add a claim for ineffective assistance of counsel for failure to adequately consult with him about his appellate rights, which the court granted.

In Atehortua-Castro's motion, she likewise asserted that her counsel, J. Roberto Cardenas, was ineffective.[2]  She stated that "[e]ven though petitioner[] requested specifically of her counsel to submit a direct appeal of her sentence, counsel did not do so."  Like her husband, Atehortua-Castro also argued actual innocence.  Atehortua-Castro subsequently moved to amend her petition to add a claim for ineffective assistance of counsel for failure to adequately consult with her about her appellate rights, which the court granted.

The government opposed both motions, asserting that "Bejarano cannot show ineffective assistance in this instance because he never directed his attorney to file a notice of appeal," and noting that "[b]oth Gibson and Cardenas testify that neither Bejarano nor Atehortua instructed them to file an appeal."  The government included affidavits of Gibson and Cardenas. Gibson stated that he had several meetings with Bejarano during which they reviewed the plea agreement.  When Gibson met with Bejarano prior to the sentencing hearing, he reviewed each paragraph with Bejarano, including the waiver of the right to appeal.  He "believe[d] [Bejarano] fully understood he was waiving appeal rights except in very limited circumstances."  He stated

---

[2] Cardenas maintains his practice in New York State.  Gibson practices in Texas and maintains his office in Dallas.  Appellants' meetings with counsel generally took place in Gibson's office, with Cardenas participating by telephone when he was not present in Texas.

that "[a]t no time during the sentencing hearing or at anytime while we were in the courtroom did [Bejarano] make any statement to me telling me to file an appeal on his behalf." He said that Bejarano and his wife

> did bring up the question of appealing the sentence at that time. I remember explaining to him that he had waived his right to appeal except in limited circumstances in the [p]lea [a]greement. I told him that I did not believe those limited circumstances existed at this time. I told him that in my opinion there was nothing for him to appeal. I believe that he understood the discussion. He did not instruct me to file a notice of appeal on his behalf at that time.

> He did not instruct me to file a notice of appeal on his behalf at any time subsequent to that meeting.

Cardenas stated that he had "numerous telephonic meetings" with Atehortua-Castro in which they reviewed the plea agreement. He "carefully went over each paragraph of the [p]lea [a]greement including . . . the Waiver of Right to Appeal[] with her," and he "believe[s] she fully understood she was waiving appeal rights except in very limited circumstances." He noted that after the hearing,

> Ms. Atehortua-Castro and [Bejarano] did bring up the possibility of appealing the sentence. Both Mr. Gibson and I explained to them that they had waived their right to appeal except in limited circumstances and both Mr. Gibson and I told them that we did not believe those limited circumstances existed at this time. I told Ms. Atehortua-Castro that since the Court had sentenced her in accordance with the plea there was nothing to appeal. She was upset, but fully understood. She did not instruct me to file a notice of appeal on [her] behalf at that time.

> Further she did not instruct me to file [a] notice of appeal on her behalf at any time subsequent to that meeting.

On April 26, 2012, the magistrate judge held an evidentiary hearing with respect to the claim that counsel provided ineffective assistance of counsel by

failing to file a notice of appeal despite Bejarano's alleged requests to do so.[3] At the hearing, the court heard testimony from Bejarano, Gibson, and Cardenas. Bejarano testified, through an interpreter, that "[w]e asked Robert[o] [Cardenas] to file an appeal." Bejarano also testified that neither Cardenas nor Gibson informed Bejarano and his wife that they reserved the right to appeal the voluntariness of their plea or the voluntariness of their waiver of the appeal. Bejarano stated that "he would have insisted on an appeal" had he known the grounds under which he could still appeal. He stated that the attorneys "did not explain to me clearly that I had the right to appeal." He admitted that he "never asked [the attorneys] to explain [his] right to appeal" and never "instructed Mr. Gibson to file an appeal on [his] behalf."

Cardenas testified that "we were all hoping for a lower sentence than that that was given by Judge Lynn." He testified that "[his] client was extremely dissatisfied with the time," and that both appellants stated "too much time" in Spanish. Cardenas testified that "[Bejarano] asked me, what about an appeal," at which point Cardenas

> [S]aid to Mike [Gibson] before he walked out of the room, Mike, before you go anywhere, you need to address this issue right now, because your client's asking about an appeal. . . . And my recollection is that Mr. Gibson said, you could appeal, but there isn't anything to appeal because you waived those rights by virtue of your plea. And the sentence was lower than the Guidelines. She took into consideration the 5K1, and then, because she staggered having to serve the actual prison sentence, that, we thought, was an extraordinary result. So, at that point, [Gibson] suggested and I continued to speak to them along those exact same lines. There was never any order to file an appeal. The question was, what

---

[3] The evidentiary hearing was a consolidated hearing on both Appellants' petitions. Atehortua-Castro was not present for the hearing and did not testify; Appellants' counsel answered affirmatively that he was "proceeding today in her interest." Because neither party argues that Atehortua-Castro's absence poses a problem, constitutional or otherwise, we do not address the issue.

about an appeal?  And it was answered in that way.  You could, but there isn't anything to appeal.

Cardenas agreed that "reasons were given for that answer."  However, he stated that it "was not explained" that "the limited exceptions to the waiver didn't apply."  Cardenas testified that he agreed with Gibson's advice, and told the appellants "[e]xactly the same thing that [Gibson] said.  I thought the advice was exactly on point."  He testified that neither appellant ever asked him about an appeal after the post-sentencing meeting.

Gibson testified that he "did think that the sentence was higher than it should have been or needed to be," and that "we were all disappointed in the 42 months."  He testified that he "did say there's really nothing to appeal.  There's nothing to be gained.  You've already waived up most of your rights.  And so the answer is no, no reason to do so.  You wouldn't win."  He "[n]ever did tell them they couldn't appeal, but [he] did make that statement that, you know, nothing to gain."  He testified that neither appellant ever asked him about an appeal after the post-sentencing meeting.

At the hearing, Appellants' new counsel argued that Gibson and Cardenas had provided ineffective assistance of counsel because "[t]here was no discussion about the advantages or the disadvantages" of appealing, and "[counsel] never addressed the limited circumstances that [Appellants] could appeal."  Therefore, "[t]here was no detailed discussion about that to give the clients the decision whether or not they should appeal."  The government asserted that the Appellants could not demonstrate prejudice.

On June 1, 2012, the magistrate judge issued her Findings, Conclusions, and Recommendation, recommending that the consolidated § 2255 motions be denied.  The magistrate judge noted that Appellants "faced a ten-year minimum sentence," and "[o]nly by virtue of their guilty pleas, appeal waivers,

and extensive cooperation" were their sentences reduced. Their sentences were "significantly below the advisory Guidelines range of 108–135 months and, thus, did not trigger any of the appeal waiver exceptions." The magistrate judge noted the "unprecedented and extremely favorable ruling" that allowed Atehortua-Castro to return to China while Bejarano served his sentence. The magistrate judge stated that "Mr. Gibson provided Bejarano sufficient information from which he could have intelligently and knowingly asserted his right to an appeal if he had wanted to." The magistrate judge found that Appellants "never instructed counsel to appeal," and concluded that "neither Petitioner reasonably demonstrated to counsel an interest in appealing." She found "Bejarano's testimony at the evidentiary hearing to the contrary" to be "not plausible," and, therefore, she determined that "counsel adequately consulted with Petitioners about appealing." The magistrate judge explained that, as a result, Appellants could not "overcome the presumption that their attorney[s'] conduct falls within the wide range of reasonable assistance."

The magistrate judge determined that even if counsel's performance was deficient, Appellants could not show prejudice because they "cannot demonstrate a reasonable probability that, but for counsel's presumed failure to adequately consult with them about an appeal, they would have timely appealed." The magistrate judge continued:

> Petitioners' only evidence of prejudice is Bejarano's testimony that, if counsel had properly advised him that he could have appealed the voluntariness of the waiver and plea, he and Castro would have insisted on appealing. Nothing in the record supports Castro's supposition, however, and, as indicated previously, the Court finds Castro's self-serving testimony implausible in light of the other evidence.

Appellants filed objections to the magistrate judge's Findings, Conclusions, and Recommendations, contending that the magistrate judge erred in both her factual findings and legal conclusions.

On July 27, 2012, the district court overruled Appellants' objections, adopted the Findings, Conclusions, and Recommendations, and denied Appellants' request for a certificate of appealability. In its judgment, issued on the same day, the court denied their habeas petitions. Only July 1, 2013, we granted Appellants a certificate of appealability on the issue of whether counsel rendered ineffective assistance by failing to adequately consult with Appellants about their appellate rights.

## II.    STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996, our review is limited to the issue identified in the certificate of appealability. 28 U.S.C. § 2253(c)(3) (2012). We review de novo a district court's denial of a § 2255 petition based on ineffective assistance of counsel. *United States v. Pham*, 722 F.3d 320, 323 (5th Cir. 2013). We review findings of fact for clear error. *Id.*

## III.    APPLICABLE LAW

To succeed on a claim of ineffective assistance of counsel, a defendant must show that (1) his "counsel's representation fell below an objective standard of reasonableness," and (2) the "counsel's deficient performance prejudiced the defendant." *Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)) (internal quotation marks omitted). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700; *see also Crutsinger v. Stephens*, 540 F. App'x 310,

313 (5th Cir. 2013) (per curiam) (unpublished) ("Failure to satisfy either prong is fatal to an [ineffective assistance of counsel] claim.").

In *Flores-Ortega*, the Supreme Court held that the *Strickland* test applies to claims "that counsel was constitutionally ineffective for failing to file a notice of appeal." 528 U.S. at 477. To satisfy the prejudice prong, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. "[E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Id.* at 485.

> To prove deficient performance, a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal. But such evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal.

*Id.* at 486. The Court has explained that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (quoting *Strickland*, 466 U.S. at 694). The defendant need not show "that his hypothetical appeal might have had merit." *Flores-Ortega*, 528 U.S. at 486; *see Pham*, 722 F.3d at 324.

We have held that *Flores-Ortega* applies "even where a defendant has waived his right to direct appeal and collateral review." *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007).

## IV.   ANALYSIS[4]

Assuming *arguendo* that Appellants can establish that their counsel did not sufficiently consult with them about filing an appeal, and that counsel had a duty to do so, Appellants cannot demonstrate prejudice. *See Flores-Ortega*, 528 U.S. at 484.   Failure to satisfy either prong of an ineffective assistance claim defeats the claim. *Strickland*, 466 U.S. at 700; *Crutsinger*, 540 F. App'x at 313.   The record does not support a finding that there is a "reasonable probability" that Appellants would have timely appealed but for their counsels' deficient failure to consult, so we need not address the deficient performance prong.   Therefore, we affirm the district court's denial of Appellants' habeas petitions.

Bejarano asserted in his petition for habeas relief that "he has shown and will further show that he would have taken an appeal."   Similarly, Atehortua-Castro asserted in her motion that it "[i]s clear that the attorney[s'] deficient performance prejudice[d] the petitioner such that there is a reasonable probability that, but for counsel[s'] professional errors, the result of the proceeding would have been different."   At the evidentiary hearing, Bejarano testified that "he would have insisted on an appeal" had he known the grounds under which he still could appeal.   He testified that he never

---

[4] We will consider Appellants to present a single claim for ineffective assistance of counsel because Bejarano's counsel (Gibson) and Atehortua-Castro's counsel (Cardenas) jointly represented Appellants, Appellants raise identical claims stemming from the same facts, the district court consolidated their appeals, and Appellants filed a joint brief. We use the term to "counsel" to refer to Gibson and Cardenas jointly.

Bejarano was released from prison on November 26, 2013, but his petition is not moot. *See Spencer v. Kemma*, 523 U.S. 1, 8 (1998) ("In recent decades, we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences . . . ."); *see also United States v. Camargo*, 119 F. App'x 670, 671 (5th Cir. 2005) (per curiam) (unpublished) ("Because [defendant] is still serving his term of supervised release, the case-or-controversy requirement is met here and the case is not moot.").

instructed counsel to file an appeal on his behalf after sentencing, and to his knowledge, neither did Atehortua-Castro.

We conclude that this record is insufficient to support a finding that there is "a reasonable probability that, but for counsel's deficient failure to consult with [Appellants] about an appeal, [Appellants] would have timely appealed." *Flores-Ortega*, 528 U.S. at 484.  Appellants rely on two facts to establish reasonable probability: that they expressed interest to counsel in appealing, and Bejarano's testimony that he would have appealed.  These two facts cannot carry Appellants' burden.

Appellants asked their counsel whether they could appeal, and it is true that "promptly express[ing] a desire to appeal will often be highly relevant in making" the prejudice determination.  *Id*. at 485.  However, contrary to Appellants' contention, this fact alone is not "proof" that Appellants would have appealed *but for* counsels' deficient performance.  The Supreme Court has explained that while "a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal," this "evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." *Id*. at 486.  Appellants must present more to succeed.

The only other evidence Appellants point to in support of their contention is Bejarano's testimony at the evidentiary hearing that he would have appealed.  However, the district court stated that "[n]othing in the record support[ed]" this supposition, and found Bejarano's testimony to be "self-serving" and "implausible in light of the other evidence."  Appellants do not argue that the district court's finding is clearly erroneous, and have not

11

demonstrated as such.[5] *See Pham*, 722 F.3d at 323; *see also Brown*, 727 F.3d at 341 ("[T]he district court was well positioned to evaluate [the defendants'] credibility and was entitled to reject their testimony as self-serving . . . ."). Moreover, Appellants waited "almost a full year after sentencing" to file their petitions, post-sentencing actions that some courts have concluded "indicate [the defendant] was unlikely to have" timely appealed. *See Johnson v. United States*, 364 F. App'x 972, 977 (6th Cir. 2010) (unpublished). Accordingly, Appellants fail to show there is a reasonable probability they would have appealed but for counsels' deficiency.

This case is distinguishable from others in which we have applied *Flores-Ortega* and found prejudice. In *Pham*, we found prejudice where the district court did not make a finding on prejudice and the government failed to brief the issue on appeal. 722 F.3d at 327. Here, the district court made findings on prejudice—including that Bejarano's testimony was "self-serving" and "implausible in light of the other evidence"—and the government briefed the issue. Appellants have not argued or shown that the district court's findings were clearly erroneous, *see id.* at 323, and their reliance on Bejarano's question

---

[5] In their reply brief, Appellants argue that the district court's finding that Bejarano's testimony was self-serving is "incorrect because there are no facts in this record to show that Appellant Bejarano's testimony was 'inconsistent with the balance of the evidence presented'" (quoting *United States v. Brown*, 727 F.3d 329, 341 (5th Cir. 2013)). However, the district court need not find a party's testimony inconsistent with other evidence in order to conclude that it is self-serving. Thus, Appellants' argument does not demonstrate that the district court clearly erred. *See also Johnson v. Collins*, 964 F.2d 1527, 1532 (5th Cir. 1992) ("When findings of fact are based on credibility determinations regarding witnesses, we must show even more deference to the trial court's findings."); *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991) ("[Defendant's] statement is self-serving and alone, insufficient to establish that, but for counsel's advice, there is a reasonable probability that he would have accepted the plea."), *superseded by statute on other grounds as recognized in Thornton v. Reynolds*, 2001 WL 845452, at *2 (S.D.N.Y. July 26, 2001). Moreover, we do not consider arguments raised for the first time in a reply brief. *United States v. Rodriguez*, 602 F.3d 346, 360 (5th Cir. 2010).

to counsel about appealing is not enough to demonstrate a reasonable probability that they would have appealed.

In *United States v. Rivas*, 450 F. App'x 420, 422, 428 (5th Cir. 2011) (per curiam) (unpublished), we found *Strickland*'s prejudice prong satisfied where the defendant instructed counsel, in writing and one day after the district court entered its order, to file an appeal, but counsel failed to do so. *Id.* at 428–29. Here, the record reflects that Appellants did not instruct counsel to appeal, either immediately after the district court entered its order or later.

The other cases Appellants rely on to support their ineffective assistance of counsel contention are also distinguishable as to the prejudice prong. In *Thompson v. United States*, 504 F.3d 1203, 1208 (11th Cir. 2007), for example, the court found the prejudice prong satisfied where the petitioner-appellant not only expressed an interest in appealing, but "was dissatisfied with what he perceived to be a disparate sentence compared to his similarly-situated co-defendants." Here, there were no disparate sentences between co-defendants to indicate that a defendant sentenced to a lengthier term for the same conduct might be more likely to appeal his sentence. Appellants received the same below-guidelines sentences, and Atehortua-Castro received the additional allowance of traveling to China while Bejarano served his sentence.

Similarly, in *United States v. Kelley*, 318 F. App'x 682, 688 (10th Cir. 2009) (per curiam) (unpublished), which Appellants cited in the district court, the court found the prejudice prong satisfied where the defendant-appellant asked counsel to "take care of everything," "ask[ed] his sister to follow up with" counsel about appealing, and "testified under oath that he intended to file an appeal, and his sister's testimony confirmed this assertion." Here, Appellants did not instruct counsel to file an appeal or ask anyone to ensure that counsel

No. 12-10952

did so.  Unlike in *Kelley*, there were no actions or other facts to suggest a reasonable probability that Bejarano would have appealed.[6]

Finally, Appellants argue that "[o]nce the Appellants heard their counsel tell them there was nothing to appeal, there was no reason for the Appellants to insist on an appeal."  In their reply brief, Appellants note that they "did not appeal because they were following the inadequate advice of counsel," and "[u]nder these circumstances, this cannot be weighed against them."  The fact that Appellants did not subsequently file an appeal or instruct their counsel to do so is but one consideration in our analysis.  Appellants' only evidence to establish their reasonable probability of appealing is Bejarano's question to counsel about an appeal and his testimony at the hearing.  As discussed, this does not satisfy the prejudice prong.  *Flores-Ortega*, 528 U.S. at 486.

## V.     CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[6] To the extent Appellants urge us to follow *Palacios v. United States*, 453 F. App'x 887, 889 (11th Cir. 2011) (per curiam) (unpublished), in which the Eleventh Circuit, in an unpublished opinion, found prejudice based on the fact that the defendant "immediately expressed dissatisfaction with his sentence and testified that he wished to file an appeal," we decline to do so.