# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 18, 2013

No. 12-70014

Lyle W. Cayce
Clerk

BILLY JACK CRUTSINGER,

Petitioner–Appellant

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent–Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:07-CV-703

Before DAVIS, SMITH, and PRADO, Circuit Judges.

PER CURIAM:[*]

Petitioner–Appellant Billy Jack Crutsinger was convicted of capital murder and sentenced to death in Tarrant County, Texas. Crutsinger now requests a certificate of appealability ("COA") to appeal the district court's denial of his petition for federal habeas relief. For the following reasons, his request for a COA is DENIED.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-70014

## Background

On April 6, 2003, Crutsinger fatally stabbed eighty-nine-year-old Pearl Magouirk and her seventy-one-year-old daughter, Patricia Syren. A Texas jury convicted him of capital murder, and, based on the jury's answers to the special issues in the court's charge, the trial judge sentenced him to death. The Texas Court of Criminal Appeals ("TCCA") affirmed the conviction and sentence on direct appeal, and the U.S. Supreme Court denied Crutsinger's petition for writ of certiorari. *Crutsinger v. State*, 206 S.W.3d 607, 608 (Tex. Crim. App. 2006), *cert. denied*, 549 U.S. 1098 (2006).

While his direct appeal was pending, Crutsinger filed a state habeas corpus application, raising eighteen claims for relief. On November 7, 2005, the state trial judge issued findings of fact and conclusions of law recommending that relief be denied. Two years later, the TCCA adopted the trial judge's findings and conclusions and denied relief. *Ex parte Crutsinger*, No. WR-63,481-01, 2007 WL 3277524, at *1 (Tex. Crim. App. Nov. 7, 2007). Crutsinger then sought federal habeas relief, and new counsel was appointed to represent him in federal court.

On May 8, 2008, before filing his federal habeas petition, Crutsinger sought funding for investigative and expert assistance in the development of his claim that his trial counsel was ineffective in failing to timely initiate a social history investigation. The district court determined, however, that this specific ineffective-assistance-of-counsel ("IAC") claim was unexhausted and procedurally barred from review. Crutsinger attempted to establish an exception to the exhaustion requirement under 28 U.S.C. § 2254(b)(1)(B)(ii) by arguing that circumstances existed that rendered the state corrective process ineffective to protect his rights. Specifically, Crutsinger claimed that "during the time that his state habeas application was pending, the general ineffectiveness of state habeas counsel appointed throughout Texas rendered the entire state

habeas process ineffective to protect the rights of death-row habeas petitioners." The court rejected this "innovative and far-reaching construction of th[e] statutory exception" and instead denied the pre-petition funding request based on "an abundance of case law establishing that the ineffective assistance of state habeas counsel cannot justify a failure to comply with the exhaustion requirement or excuse any resulting procedural default."

Crutsinger then filed a habeas petition under 28 U.S.C. § 2254, alleging three grounds for relief, including the IAC claim for which he had previously sought funding. Crutsinger alleged that (1) the trial court failed to suppress evidence resulting from his illegal arrest in violation of the Fourth Amendment, (2) his trial counsel provided ineffective assistance in failing to timely initiate a social history investigation, which caused counsel to overlook evidence of his mental impairments caused by alcohol addiction, head trauma, depression, and low intelligence, and (3) actual innocence. After determining that *Stone v. Powell*, 428 U.S. 465, 494 (1976), barred consideration of Crutsinger's Fourth Amendment claim, the court addressed the IAC claim.

Though the court had found that the substance of the IAC claim was not developed in state court, the Government did not assert a procedural bar based on the failure to exhaust and instead argued the merits of the claim. Under these circumstances, the court declined to apply a procedural bar *sua sponte* and instead reviewed the claim de novo because "the record contain[ed] sufficient facts to make an informed decision on the merits." The court determined that Crutsinger was unable to show either that his counsel's performance fell below an objective standard of reasonableness or that he was prejudiced by counsel's deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). As a result, the court rejected Crutsinger's IAC claim, and, finding that his actual innocence claim also lacked merit, denied his habeas petition and denied the COA.

No. 12-70014

Shortly thereafter, Crutsinger moved to alter the judgment under Federal Rule of Civil Procedure 59(e). After the district court denied that motion, Crutsinger initiated the present proceeding, requesting that this Court issue a COA.

## Discussion

Under the Antiterrorism and Effective Death Penalty Act of 1996, petitioners may not appeal the denial of habeas relief without securing a COA. 28 U.S.C. § 2253(c)(1); *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003). To obtain a COA, the petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El*, 537 U.S. at 327.

On review, we must issue a COA if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 338. "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.* "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." *Id.* at 336. It requires only "an overview of the claims in the habeas petition and a general assessment of their merits." *Id.* For death penalty cases, "any doubts as to whether the COA should issue are resolved in favor of the petitioner." *Moore v. Quarterman*, 534 F.3d 454, 460 (5th Cir. 2008).

Crutsinger requests a COA for his claim that his trial counsel provided ineffective assistance by failing to adequately investigate and develop evidence in all phases of the trial. Although Crutsinger presented an IAC claim in the state habeas proceeding based on trial counsels' alleged failure to investigate

4

generally, the district court determined that the federal iteration of Crutsinger's IAC claim—one concerned with the timing of the investigation rather than the general failure to adequately conduct one—had not been developed in state court. The court nevertheless reviewed the claim de novo, declining to raise the procedural bar *sua sponte.* Our review, therefore, is limited to whether reasonable jurists would find debatable or wrong the district court's determination of Crutsinger's IAC claim.

## A.    IAC Claim

"The Sixth Amendment provides for the right to counsel, and the Supreme Court has recognized that 'the right to counsel is the right to effective assistance of counsel.'" *Neville v. Dretke*, 423 F.3d 474, 482 (5th Cir. 2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). To establish a denial of that right, the petitioner must demonstrate (1) that counsel's performance "fell below an objective standard of reasonableness," and (2) that the deficient performance prejudiced the petitioner's case. *Strickland*, 466 U.S. at 688–92. Failure to satisfy either prong is fatal to an IAC claim.

In evaluating *Strickland*'s first prong, counsel's performance is measured against an objective standard of reasonableness under prevailing professional norms. *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Because there are countless ways to provide effective assistance, the petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to counsel's perspective at the time investigative decisions are made and by giving a heavy measure of deference to counsel's judgments." *Rompilla*, 545 U.S. at 381 (internal quotation marks and citations omitted).

During the underlying criminal proceedings, the trial court appointed, on counsel's motion, a forensic psychologist, Dr. Kelly Goodness, as a mitigation specialist to investigate Crutsinger's social history. In their affidavit to the state habeas court, Crutsinger's trial counsel explained that Dr. Goodness's evaluation would not have benefited Crutsinger at punishment and that the use of her report would have allowed the State to present evidence based on its own expert's evaluation. The district court determined that both this decision and the underlying investigation into Crutsinger's social history were reasonable and that, even if counsel's performance had been deficient, Crutsinger failed to establish that the performance prejudiced his case.

Rather than challenge the substance of the district court's determination, Crutsinger now, as in his motion to alter the judgment, argues that the district court misconstrued his IAC claim and denied relief on a weaker claim that he never asserted. Specifically, he claims that his argument is that trial counsel should have investigated further into his mental health based on the "red flags" raised in Dr. Goodness's report—not that trial counsel should have presented Dr. Goodness's testimony at trial. He claims that only "after further investigation and sufficient development of evidence of brain impairment, and the psycho-social history of Mr. Crutsinger, could counsel then make an informed decision on whether to present such evidence or not."

Despite Crutsinger's claim to the contrary, the district court addressed the arguments that he raised in his habeas petition. The essence of Crutsinger's IAC claim was that trial counsel failed to timely investigate Crutsinger's social history and, because the investigation was conducted too late, trial counsel lacked sufficient information to develop a viable strategy. For example, Crutsinger argued that a timely investigation would have revealed that one of the critical themes running throughout the case was his alcohol addiction, which, together with scientific information about the disease of alcohol addiction,

would have provided a basis for trial counsel to (1) assert that Crutsinger's confession was nonvoluntary, (2) negate *mens rea*, and (3) offer a credible response to the prosecution's assertion that Crutsinger was "evil." Similarly, Crutsinger argued that Dr. Goodness's report revealed that he had several mental impairments and had suffered prior head trauma, both of which were factors that, had they been discovered earlier, could have been used to undercut the voluntariness of his confession and his criminal responsibility.

The district court rejected these specific arguments. First, the court determined that the investigation was timely and adequate. The court found that Crutsinger's assumption that trial counsel did not consult Dr. Goodness until the day she issued her written report was contradicted by Dr. Goodness's indication that she would first make an oral report to trial counsel and prepare a written report only if requested. Additionally, the court found that even if Crutsinger could show that trial counsel made strategic decisions without the benefit of Dr. Goodness's investigation, he still could not establish prejudice. The court found no evidence, either in the record or in the materials Crutsinger submitted with his habeas petition, to support any of the defenses Crutsinger claimed he could have asserted.

It is only now in his application for a COA that Crutsinger asserts that his true argument was that trial counsel should have investigated further upon learning of certain "red flags" in Dr. Goodness's report. But even if this were the argument he presented in his habeas petition, the district court's reasoning encompasses it. The critical issue in both of Crutsinger's arguments is whether the investigation was reasonable, and the district court determined that it was. As the district court noted,

> Counsel here hired a forensic psychologist who, with the assistance of a social worker and psychological associate, conducted a mitigation investigation that is documented in a twenty-three page report. That report is supported by interviews with Petitioner's

> friends and family, document review summaries, a criminal history, fourteen hours of clinical interviews with Petitioner, and the administration of nineteen different psychological instruments.

We find no reason to dispute the district court's determination that this investigation was reasonable. Indeed, Crutsinger himself does not challenge the thoroughness of Dr. Goodness's report, relying instead on the red flags within it that should have alerted trial counsel of the need for further testing. Counsels' decision to terminate the investigation, however, was made after a thorough investigation by Dr. Goodness, and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690; *see also Wiggins v. Smith*, 539 U.S. 510, 533 (2003) ("*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing.").

We find that the evidence supports the district court's determination that counsel conducted a thorough investigation. Based on that investigation, counsel made the strategic decision not to present Dr. Goodness's testimony and not to pursue further investigation. Though Crutsinger now challenges the failure to pursue further investigation, he has not explained what the additional investigation he requests would reveal nor how it would have changed the result of his trial and sentence. Consequently, Crutsinger has failed to cast doubt on the district court's conclusion that "[c]ounsels' investigation in this case was not deficient, but was guided by sufficient information upon which a reasonable strategic decision could be made." Under these circumstances, fairminded jurists could not disagree with the district court's determination of Crutsinger's IAC claim. We therefore deny Crutsinger's application for a COA.

## B.    Denial of Funding Under 18 U.S.C. § 3599

Crutsinger next challenges the district court's decision to deny him funding for investigative and expert assistance in the development of his IAC claim. Crutsinger's request for funding is governed by 18 U.S.C. § 3599. Though Crutsinger challenges the district court's funding decision in his application, a COA "is not necessary to appeal the denial of funds for expert assistance." *Smith v. Dretke*, 422 F.3d 269, 288 (5th Cir. 2005). Instead, funding orders are reviewed for abuse of discretion. *Id.*

Section 3599 provides that a district court may authorize a defendant's attorneys to obtain investigative, expert, or other services upon a finding that such services "are reasonably necessary for the representation of the defendant." 18 U.S.C. § 3599(f).[1] If the court finds that such services are reasonably necessary, it "shall order the payment of fees and expenses therefor." *Id.* Reasonably necessary in this context means "that a petitioner must demonstrate 'a substantial need' for the requested assistance." *Riley v. Dretke*, 362 F.3d 302, 307 (5th Cir. 2004) (quoting *Clark v. Johnson*, 202 F.3d 760, 768 (5th Cir. 2000)). "A petitioner cannot show a substantial need when his claim is procedurally barred from review." *Id.* Similarly, the denial of funding will be upheld when it would only support a meritless claim or when it would only supplement prior evidence. *Woodward v. Epps*, 580 F.3d 318, 334 (5th Cir. 2009).

The district court denied Crutsinger's requested funding because Crutsinger could not show at the time of his request that the claim sought to be investigated was not procedurally barred from review. Crutsinger first argues that this denial was improper because the justification behind it—that the claim sought to be investigated was procedurally barred—is irreconcilable with the court's later decision to address the merits of his claim. In other words,

---

[1] The statute also requires a showing of indigence, an issue not in dispute here.

Crutsinger argues that it was improper for the district court to deny funding based on a procedural bar only to later reach the merits of the claim, which had to be presented without the benefit of the requested investigative funds. We disagree.

The district court's decision to address the merits of the claim does not establish an abuse of discretion for its prior funding decision. The court relied on our well-established rule in denying funding to investigate a claim that would be procedurally barred from review. *See Riley*, 362 F.3d at 307. It was only after Crutsinger applied for habeas relief and the State did not seek to apply the procedural bar that the court decided to reach the merits. The decision not to apply the procedural bar *sua sponte* was within the district court's discretion. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998) ("We conclude that a federal district court may, in the exercise of its judicial discretion, raise procedural default sua sponte."). That decision, however, does nothing to undercut the justification for the initial denial of funds—the claim the court reviewed was still unexhausted. *See* 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.").

Additionally, the court even implied that it was unnecessary to revisit its prior funding decision when it determined that "the record contain[ed] sufficient facts to make an informed decision on the merits." Crutsinger has presented no argument to contradict this point and does not argue that his IAC claim was in fact exhausted. He simply asserts that "[h]ad the funding request been granted, the petition would have been resolved in a different manner than it was." This

No. 12-70014

conclusory statement is insufficient to establish that the district court abused its discretion in denying Crutsinger's funding request.

Crutsinger next argues that the district court's decision to deny funding was an unreasonable application of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). In *Martinez*, the Supreme Court held,

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

132 S. Ct. at 1320.[2] Crutsinger argues that after *Martinez*, the district court's justification for the denial of funds—that the ineffective assistance of state habeas counsel could not excuse any procedural default—is no longer correct. *Martinez*, however, was decided in 2012—four years after the district court denied Crutsinger's funding request. As we have previously recognized, *Martinez* did not establish a new rule of constitutional law to be applied retroactively. *See Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012) (noting that the *Martinez* decision was an "equitable ruling"). As such, it has no bearing on the district court's decision to deny funding.

In any event, even if *Martinez* applied to Crutsinger's funding request, he has failed to establish, or even attempt to establish, either that his state habeas counsel was ineffective or that his underlying IAC claim is "substantial," both of which are required under *Martinez*. Instead, he argues that *Martinez* "obligated the district court to provide pre-petition funding" because it "tacitly

---

[2] This rule applies in Texas, even though Texas does not preclude IAC claims on direct appeal, because "the Texas procedural system—as a matter of its structure, design, and operation—does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal." *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013).

11

acknowledges that litigating IAC claims requires not merely an effective attorney, but also one that had adequate resources to demonstrate the underlying claim is a substantial one in order to overcome procedural default." *Martinez*, however, does not mandate pre-petition funding, nor does it alter our rule that a prisoner cannot show a substantial need for funds when his claim is procedurally barred from review.  It provides only that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 132 S. Ct. at 1315.  Without both a showing under *Strickland* that state habeas counsel was ineffective and a demonstration that the underlying IAC claim "has some merit," *id.* at 1318, *Martinez* offers no relief from a potential procedural default.  Because Crutsinger has failed to show either, any relief provided by *Martinez* would be unavailable to him.

## Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of Crutsinger's request for investigative funds.  Additionally, because reasonable jurists could not disagree with the district court's determination of Crutsinger's IAC claim, Crutsinger's request for a COA is DENIED.